*Bugliotti v. Republic of Argentina*

# United States Court of Appeals
## For the Second Circuit

August Term 2021

Argued:  June 7, 2022
Decided:  May 2, 2023

No. 21-1014

EUCLIDES BARTOLOMÉ BUGLIOTTI, MARIA
CRISTINA DE BIASI, and ROXANA INÈS
ROJAS, as the Executor of the Estate of
Hugo Miguel Lauret,

*Plaintiffs-Appellants*,

*v.*

REPUBLIC OF ARGENTINA

*Defendant-Appellee*.*

Appeal from the United States District Court
for the Southern District of New York
No. 17-cv-9934, Loretta A. Preska, *Judge*.

---

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Before:    CALABRESI, LYNCH, and SULLIVAN, *Circuit Judges*.

Euclides Bartolomé Bugliotti, Maria Cristina de Biasi, and Roxana Inès Rojas (collectively, "Plaintiffs") appeal from the judgment of the district court (Preska, *J.*) dismissing their claims against the Republic of Argentina ("Argentina") in connection with sovereign bonds issued by Argentina and purchased by Plaintiffs. We vacated in part the district court's previous judgment of dismissal and remanded the case for the district court to determine in the first instance whether Plaintiffs are entitled to bring suit under Argentine law. The district court found on remand that Plaintiffs were not. Plaintiffs appealed again, arguing that the district court's findings are erroneous and that Rule 17 of the Federal Rules of Civil Procedure offers them an alternative avenue to enforce their rights under the bonds in federal court. We hold that Plaintiffs are not entitled to bring suit under Argentine law and that nothing in Rule 17 can be read to alter that result. Accordingly, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> MICHAEL C. SPENCER, Milberg Coleman Bryson Phillips Grossman LLP, Garden City, NY, *for Plaintiffs-Appellants*.
>
> CARMINE D. BOCCUZZI, JR. (Rahul Mukhi, Katie L. Gonzalez, Rathna J. Ramamurthi, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Euclides Bartolomé Bugliotti, Maria Cristina de Biasi, and Roxana Inès Rojas

(collectively, "Plaintiffs") appeal from the judgment of the district court (Preska, *J.*)

dismissing their claims against the Republic of Argentina ("Argentina") in

connection with sovereign bonds issued by Argentina and purchased by Plaintiffs.

2

We vacated in part the district court's previous judgment of dismissal and remanded the case for the district court to determine in the first instance whether Plaintiffs are entitled to bring suit under Argentine law. The district court found on remand that Plaintiffs were not. Plaintiffs appealed again, arguing that the district court's findings are erroneous, and that Rule 17 of the Federal Rules of Civil Procedure offers them an alternative avenue to enforce their rights under the bonds in federal court. We hold that Plaintiffs are not entitled to bring suit under Argentine law and that nothing in Rule 17 can be read to alter that result. Accordingly, we **AFFIRM** the judgment of the district court.

## I.   BACKGROUND

Like many other claimants who have come before us in recent years, Plaintiffs purchased a large amount of Argentina's sovereign bonds under the 1944 Fiscal Agency Agreement ("FAA"), on which Argentina defaulted in 2001. But unlike those other claimants, Plaintiffs enrolled in a tax credit program (the "Tax Credit Program") shortly before Argentina's default, which allowed them to receive tax credits in lieu of interest payments. Under the Tax Credit Program, Plaintiffs placed their bonds in trust with Caja de Valores, S.A. ("Caja" or the "Trustee") and received in return two types of certificates – tax credit certificates

3

and custody certificates (abbreviated in Spanish as "CCFs" and "CCs," respectively). Each CCF corresponded to one scheduled interest payment on the bond tendered, and each CC corresponded to the bond's outstanding principal. Bondholders in possession of the certificates were able to redeem the CCFs as each interest payment came due for a credit against their Argentine tax obligations. Plaintiffs, therefore, were able to claim tax credits using the CCFs after Argentina defaulted, while bondholders who did not participate in the Tax Credit Program stopped receiving interest payments on their bonds altogether.

All of Plaintiffs' bonds matured by the end of 2017, but Argentina has not repaid the principal to date. Plaintiffs brought this case in federal court against Argentina, seeking damages in the amount of the unpaid principal and post-maturity interest. Argentina moved to dismiss the case, arguing that it was immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* The district court agreed, finding that, although Argentina had previously waived sovereign immunity, submitted to federal jurisdiction, and appointed an agent for service of process under the FAA in connection with the bonds, Plaintiffs' participation in the Tax Credit Program constituted an "exchange" of Plaintiffs' bonds for the CCFs and CCs, such that Plaintiffs no

4

longer "own[ed]" the bonds themselves. *Bugliotti v. Republic of Argentina (Bugliotti I)*, No. 17-cv-9934 (LAP), 2019 WL 586091, at *2 (S.D.N.Y. Jan. 15, 2019). Since the trust agreement that Plaintiffs and Caja executed in connection with the Tax Credit Program (the "Trust Agreement") did not contain any comparable waiver, submission, or appointment of agent, the district court reasoned that Plaintiffs could no longer rely on the FAA as a waiver of sovereign immunity. Accordingly, the district court dismissed Plaintiffs' claims for lack of jurisdiction. *See Bugliotti I*, 2019 WL 586091, at *3–4.

Plaintiffs appealed to this Court, and in March 2020, we determined that the relevant question was not whether Plaintiffs owned the bonds but "whether the bonds remain a live obligation of the Argentine government and, if so, who may bring suit to enforce them" under Argentine law. *Bugliotti v. Republic of Argentina (Bugliotti II)*, 952 F.3d 410, 413 (2d Cir. 2020). We remanded the case, concluding that the district court was, in the first instance, "better situated" for determining foreign law under Rule 44.1 of the Federal Rules of Civil Procedure. *Id.* at 411.

On remand, the district court reviewed evidence and arguments from the parties under Rule 44.1. The district court found that Argentine law provided Caja with the exclusive right to sue under the bonds, that Caja had not delegated its

5

right to sue to Plaintiffs, and that no party – Caja or Plaintiffs – could bring suit under the bonds unless Plaintiffs first "reassembled" their bonds by returning the CCs and the economic value of the CCFs to the Argentine government. *Bugliotti v. Republic of Argentina (Bugliotti III)*, No. 17-cv-9934 (LAP), 2021 WL 1225971, at *7–9 (S.D.N.Y. Mar. 31, 2021). The district court concluded that "Plaintiffs lack[ed] standing to bring suit to enforce the [bonds] . . . under Argentine trust law," and therefore, could not "invoke the [FAA's] service[-]of[-]process and jurisdictional [waivers] under the FSIA." *Id.* at *9. Plaintiffs timely appealed.

## II.  STANDARDS OF REVIEW

"We review *de novo* the dismissal of a complaint for lack of personal and subject-matter jurisdiction." *Bugliotti II*, 952 F.3d at 412. Rule 44.1 provides that a "court's [foreign-law] determination must be treated as a ruling on a question of law," Fed. R. Civ. P. 44.1, which – "as is true of domestic[-]law determinations" – is subject to *de novo* appellate review, *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018).

## III.  DISCUSSION

On appeal, Plaintiffs argue that the district court erred in finding that they were not entitled to bring suit to recover the bonds under Argentine law;

6

alternatively, they contend that Rule 17 of the Federal Rules of Civil Procedure provides a separate avenue for them to enforce their rights under the bonds in federal court. We address each of these arguments in turn.

## A.    Right to Bring Suit Under Argentine Law

The district court found that Plaintiffs were not entitled to bring suit under the bonds because (1) Caja could not delegate its enforcement right to Plaintiffs under Argentine law; (2) even if Caja could do so, Caja did not in fact delegate its enforcement right to Plaintiffs; and (3) no party – Caja or Plaintiffs – could bring suit under the bonds without first reassembling the bonds by returning the CCs and the economic value of the CCFs to the Argentine government. *See Bugliotti III*, 2021 WL 1225971, at *7–9. We conclude that even if Caja could delegate its enforcement right to Plaintiffs under Argentine law, and Plaintiffs were not required to reassemble the bonds before bringing suit, Plaintiffs still lacked authority to bring suit under the bonds because Caja did not, in fact, delegate its enforcement right to Plaintiffs.

Section 2.1 of the Trust Agreement provides that the trust "is governed by . . . Law 24[,]441" of Argentina. App'x at 33. Article 18 of Law 24,441, in turn, states that Caja as the Trustee may "exercise all actions necessary to defend the [bonds]," but "[a] judge may authorize the trustor or the beneficiary to exercise

7

actions instead of the [T]rustee[] when the latter fails to do so without sufficient cause." *Id.* at 352. Section 6 of the Trust Agreement further provides that "the Trustee is not obliged to initiate any court proceedings of any kind" in "pursuing the enforcement of the rights that are granted by the CCFs or CCs, or the [bonds]." *Id.* at 36. Moreover, "[f]or all purposes of [the Trust] Agreement," section 16 states that Plaintiffs and Caja "agree to resolve their disputes through an arbitration [before] the Permanent Arbitration Tribunal of the Buenos Aires Stock Exchange . . . , waiving any other jurisdiction that may correspond to them." *Id.* at 38.

Plaintiffs argue that they were free to bring suit under the bonds on Caja's behalf without first seeking judicial authorization as required by Law 24,441 because "Caja delegated and ratified Plaintiffs . . . to commence and prosecute this case." Pls. Br. at 35. In making this argument, Plaintiffs rely on paragraph 5 of a certification executed between Caja and Plaintiffs (the "Caja Certification"), which states:

> The Trustee certifies that according to the terms of the Trust Agreement, the Trustee is not responsible for the pursuit of legal action for the fulfillment of the rights granted by the CCs or the underlying [b]onds, and the Trustee accordingly *looks to* [("*entiende*")] Bugliotti to take such action.

8

App'x at 190–91 (emphases added).  Plaintiffs argue that "[t]he only plausible meaning of [paragraph] 5 is that Caja was passing the baton to Plaintiffs" to "recover[] on the bonds."  Pls. Br. at 36.  We disagree.

As Argentina's expert pointed out, the Caja Certification does not contain "any indication . . . that any party intended to modify. . . the Trust Agreement," App'x at 857, which expressly provides that the Trustee retained exclusive authority to "exercise all actions necessary" to bring suit under the bonds absent judicial intervention.  *Id.* at 809.  Nothing in the Caja Certification suggests an intent to change, modify, or amend the terms of the Trust Agreement.  *Id.* at 847.  Plaintiffs nonetheless contend that the word "*entiende*" in paragraph 5 – which they translate as "looks to," *id.* at 191, rather than "understands," *id.* at 858 – suggests such a reading, *see* Pls. Br. at 36.  But whether "*entiende*" means "looks to" or "understands" does not matter, since neither word suggests that the parties intended to "*modify* any term of the Trust Agreement," App'x at 858 (emphasis added), or that "the Trustee *delegated* the ability to enforce *its* rights to Plaintiffs," *id.* at 859 (internal quotation marks omitted) (emphasis in original).  To the contrary, when read in full and in context, the Caja Certification plainly states that Plaintiffs "certif[y] [their] submission to the regime established in the Trust

9

Agreement." *Id.* at 191. As discussed, the Trust Agreement provides that Caja alone may "exercise all actions necessary" to bring suit under the bonds, *id.* at 809, and that Caja "is not obliged to initiate any court proceedings of any kind," *id.* at 36. To the extent that Plaintiffs disagree with Caja's decision not to bring suit to recover on the bonds, their remedy is limited by section 16 of the Trust Agreement, which directs Plaintiffs and Caja to "resolve their disputes through an arbitration [before] the Permanent Arbitration Tribunal of the Buenos Aires Stock Exchange . . . , waiving any other jurisdiction that may correspond to them," *id.* at 38, and by Law 24,441, which requires judicial authorization before "the beneficiary [may] exercise actions instead of [Caja]," *id.* at 352.

Therefore, even if we assume arguendo that Caja had the authority to delegate its enforcement right to Plaintiffs, and that Plaintiffs were not required to first reassemble the bonds before bringing this action, we still cannot find that Plaintiffs are entitled to bring suit to recover the bonds under Argentine law, since there is no evidence that Caja ever made such a delegation.[1]

---

[1] After oral argument in this case, Plaintiffs moved to supplement the record on appeal to include a certification that they executed with Caja. *See* Doc. No. 72. We declined to consider such post-hoc, "extra-record assertions and documents." *Rana v. Islam*, 887 F.3d 118, 122 (2d Cir. 2018) (citing Fed. R. App. P. 10(a)(1)); *see also* Doc. No. 80 (denying Plaintiffs' motion to supplement record on appeal); *Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002) ("[M]aterial not included in the record on appeal will not be considered.").

**B.**     **Rule 17 of the Federal Rules of Civil Procedure**

Plaintiffs argue, in the alternative, that Rule 17 of the Federal Rules of Civil Procedure "recognizes Plaintiffs . . . as proper plaintiffs entitled to sue in place of [Caja]." Pls. Br. at 49 (internal quotation marks omitted). Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest," which includes "a trustee of an express trust." Fed. R. Civ. P. 17(a)(1)(E). But under Rule 17(a)(3), "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "After [such] ratification, joinder, or substitution, the action [shall] proceed[] as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3).

Plaintiffs' Rule 17 argument comes in two steps. First, Plaintiffs contend that Rule 17(a)(1) – rather than Argentine law – prescribes the identity of the real parties in interest. Second, Plaintiffs argue that because Caja – as the Trustee – is the real party in interest under Rule 17(a)(1)(E), and the Caja Certification is effectively Caja's ratification for Plaintiffs to proceed as plaintiffs in this action, the district court erred in dismissing Plaintiffs' claims in violation of Rule 17(a)(3). Again, we disagree.

11

The Rules Enabling Act provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge[,] or modify any substantive right." 28 U.S.C. § 2072(b). Heeding this command, we have repeatedly held that "[t]he procedural mechanisms set forth in Rule 17(a) for ameliorating real[-]party[-]in[-]interest problems may not . . . be employed to expand substantive rights." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 49 (2d Cir. 2005); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 424 (2d Cir. 2015) (holding same); *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83 (2d Cir. 2013) (holding same). Rule 17(a) simply requires that a federal "action be brought by the person who . . . is entitled to enforce the [asserted] right," and whether a plaintiff is entitled to enforce the asserted right is a "question [that] must be answered with reference to *substantive* . . . law." *Schreiber*, 407 F.3d at 48. To hold otherwise "would amount to an improper expansion of the substantive rights provided by the [substantive law]." *Fed. Treasury*, 726 F.3d at 83.

As explained above, we have already concluded that Plaintiffs do not have the right to recover the bonds under Argentine law – the applicable substantive

12

law in this case. That being so, Rule 17 provides no alternative avenue for Plaintiffs to bring suit in federal court. *See id.*; *Schreiber*, 407 F.3d at 49.

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**