20-3858-(L)
*PDVSA, et al. v. MUFG Union Bank, GLAS Americas*

In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021

Argued: January 26, 2022
Question Certified: October 13, 2022
Certified Question Answered: February 20, 2024
Decided: July 3, 2024

Docket Nos. 20-3858, 20-4127

PETRÓLEOS DE VENEZUELA S.A., PDV HOLDING, INC., PDVSA PETRÓLEO
S.A.,

*Plaintiffs-Counter-Defendants-Appellants*,

–v.–

MUFG UNION BANK, N.A., GLAS AMERICAS LLC,

*Defendants-Counter-Claimants-Appellees.*

Before:      LEVAL, LOHIER, and ROBINSON, *Circuit Judges*.

Appeal from a judgment entered in the United States District Court for the Southern District of New York (Failla, *J.*) declaring valid and enforceable against Appellants Petróleos de Venezuela S.A., PDV Holding, Inc., and PDVSA Petróleo, S.A. (collectively "PDV Entities") instruments governing a debt issue—notes, indenture, and

a pledge agreement. The district court granted summary judgment in favor of Appellees, MUFG Union Bank, N.A. and Glas Americas LLC (collectively "Creditors"), concluding that the instruments were valid and enforceable under New York law. It rejected the PDV Entities' arguments that the instruments were void because they were invalid under the law of Venezuela, the jurisdiction in which the notes were issued, and that the court should decline to enforce the notes on the basis of the act-of-state doctrine.

On appeal, because we determined that existing New York law did not clearly settle the relevant choice-of-law issues, we certified questions to the New York Court of Appeals. The Court of Appeals has now answered. In light of the New York Court of Appeals' holding that Venezuelan, not New York, law governs the validity of the instruments in this case, the district court erred in applying New York law to determine their validity. Accordingly, we VACATE the decision of the district court and REMAND for further proceedings.

————————

Michael J. Gottlieb, Kristin E. Bender, Willkie Farr & Gallagher LLP, Washington, D.C.; Nicholas Reddick, Willkie Farr & Gallagher LLP, San Francisco, CA; Jeffrey B. Korn, Willkie Farr & Gallagher LLP, New York, NY; Kurt W. Hansson & James Ferguson, Paul Hastings LLP, New York, NY; Igor V. Timofeyev, Paul Hastings LLP, Washington, D.C., *for Plaintiffs-Counter-Defendants-Appellants*.

Jonathan H. Hurwitz, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Roberto J. Gonzalez, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, D.C.; Matthew S. Salerno, Latham & Watkins LLP, New York, NY, *for Defendants-Counter-Claimants-Appellees*.

Donald B. Verrilli, Jr., Elaine J. Goldenberg Munger, Tolles & Olson LLP, Washington, D.C.; George M. Garvey, Munger, Tolles & Olson LLP, Los Angeles, CA, *for Amicus Curiae the Bolivarian Republic of Venezuela*.

Douglass Mitchell, Previn Warren, Jenner & Block LLP, Washington, D.C., *for Amici Curiae David Landau, Nelson Camilo Sanchez Leon, Mila Versteeg, and Diego Zambrano.*

PER CURIAM:

The United States District Court for the Southern District of New York (Failla, *J.*) declared valid and enforceable against Plaintiffs-Appellants Petróleos de Venezuela S.A., PDV Holding, Inc., and PDVSA Petróleo, S.A. (collectively "PDV Entities") instruments governing a debt issue—notes, indenture, and a pledge agreement. The district court granted summary judgment in favor of Defendants-Appellees, MUFG Union Bank, N.A. and Glas Americas LLC (collectively "Creditors"), concluding that the instruments were valid and enforceable under New York law. It rejected the PDV Entities' arguments that the instruments were void because they were invalid under the law of Venezuela, the jurisdiction in which the notes were issued, and that the court should decline to enforce the notes on the basis of the act-of-state doctrine.

Because we determined that existing New York law did not clearly settle the relevant choice-of-law issues, we certified to the New York Court of Appeals questions relating to § 8-110 of New York's Uniform Commercial Code. This case now returns to us from that court, which concluded that, pursuant to § 8-110, the

3

law of Venezuela, not New York, governs the validity of the instruments at issue. Because the district court's judgment rested on its conclusion that the validity of the instruments depends on substantive New York law, and not Venezuelan law, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

We assume familiarity with the details of this case, which we described in our certification decision, and provide only a high-level summary of the relevant facts and procedural background here. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456 (2d Cir. 2022) ("*PDVSA II*").

### I.     Facts

In 2007, Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"), issued the first of a series of notes totaling $9.15 billion scheduled to come due in 2017 (the "2017 Notes"). Between 2007 and 2016, various credit ratings agencies downgraded PDVSA's rating.

In 2016, with repayment of principal on the horizon, PDVSA sought to extend its runway. It offered to exchange the 2017 Notes for new notes due in 2020 (the "2020 Notes"). The 2017 Notes were not secured by any collateral, so to sweeten the deal, PDVSA secured the 2020 Notes with a pledge from PDV

4

Holding, Inc. of a 50.1% equity interest in CITGO Holding, Inc., the oil company that is widely considered to be one of Venezuela's most important assets. We refer to this tender offer and the ensuing transaction as the "Exchange Offer."

In the run up to this transaction, Venezuela was experiencing intense political conflict. In 2016, the President of Venezuela was Nicolás Maduro, but the country's legislature, the National Assembly, was controlled by a coalition of opposition parties. This lineup led to tension surrounding Maduro's and the National Assembly's respective constitutional powers.

Article 150 of the 1999 Constitution of the Bolivarian Republic of Venezuela ("Venezuelan Constitution") provides, among other things, that no "national public interest contract" shall be executed with or transferred to foreign entities "without the approval of the National Assembly." J. App'x at 86. The term "national public interest contract" is not defined.

In early May 2016, Maduro declared a "State of Exception and Economic Emergency" and claimed a number of powers, including the right to unilaterally execute public interest contracts. *Id.* at 2612. In response, the National Assembly passed a resolution rejecting Maduro's claimed authority to sign contracts of public interest without the National Assembly's approval and asserting that

5

contracts of national public interest executed without the Assembly's approval would be "null and void in their entirety." *Id.* at 3515–16.

Immediately after PDVSA announced that its Board had approved the Exchange Offer, the National Assembly passed another resolution in September 2016. This one expressly identified the Exchange Offer and purported "[t]o reject categorically that, within the swap transaction, 50.1% of the shares comprising the capital stock of Citgo Holding Inc. are offered as a guarantee with priority, or that a guarantee is constituted over any other property of the Nation." *Id.* at 111. The resolution also summoned the PDVSA President to explain the proposed bond swap in front of the National Assembly.

Notwithstanding the National Assembly's resolutions, the Exchange Offer closed with noteholders representing about 39% of the aggregate principal amount outstanding tendering their 2017 Notes in exchange for the 2020 Notes.

After the Exchange Offer was completed, the political turmoil in Venezuela did not let up. In 2018, Maduro claimed he won the country's presidential election, but the National Assembly took a different position. It issued a legislative order naming Juan Guaidó—the National Assembly President—as the Interim President of Venezuela. The United States, too, recognized Guaidó, calling the National Assembly the "only legitimate branch of government duly elected by the

6

Venezuelan people" and referring to the 2018 Venezuelan presidential election as "not free, fair or credible." *Id.* at 4656.

In the months following the election fallout, the National Assembly took two more steps relevant to this appeal. In February 2019, it enacted a statute under which Guaidó appointed a new *ad hoc* board of directors for PDVSA ("Ad Hoc Board"). And in October 2019, the National Assembly passed a resolution purporting to ratify that the 2020 Notes violated the Venezuelan Constitution.

Though PDVSA made the scheduled payments on the 2020 Notes between 2016 and April 2019, the Ad Hoc Board took the position that the payments were made subject to a reservation of rights as to the validity of the debt. Ultimately, in October 2019, PDVSA did not make its scheduled principal and interest payments, leading to this lawsuit.

## II. Procedural Background

### A. District Court

The PDV Entities are the issuer (PDVSA), guarantor (PDVSA Petróleo S.A.), and pledgor (PDV Holding, Inc.) of the 2020 Notes. In 2019, they filed this suit against the Creditors—the trustee (MUFG Union Bank, N.A.) and collateral agent (GLAS Americas LLC) of the 2020 Notes.

7

In particular, the PDV Entities sought declarations that the 2020 Notes, and the associated indenture and pledge agreement (collectively the "Governing Documents"), are invalid, illegal, null and void *ab initio*, and therefore unenforceable. They also requested an injunction preventing the Creditors from enforcing any claimed remedy under the Notes. The Creditors answered by asking for a declaratory judgment that the Governing Documents *are* enforceable and asserting counterclaims for breach of contract, breach of warranty, unjust enrichment, and *quantum meruit*.

After both parties moved for summary judgment, the district court ruled in favor of the Creditors. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257 (S.D.N.Y. 2020) ("*PDVSA I*"). The district court rejected the PDV Entities' argument that the Governing Documents were invalid based on the National Assembly's various resolutions and pursuant to the act-of-state doctrine. The court also rejected the PDV Entities' argument that, independent of the act-of-state doctrine, the Governing Documents were invalid under applicable law. Applying New York choice-of-law principles, the district court held that substantive New York law determined whether the Governing Documents were validly issued, and that the Venezuelan Constitution was irrelevant. The court concluded that under New York law the Governing Documents were enforceable,

8

and it declared the PDV Entities in default. As a result, it entered a monetary judgment of approximately $1.7 billion.

## B. Our Certification

The PDV Entities appealed to us. We determined that the choice-of-law analysis—in particular, whether substantive Venezuelan or New York law determines the validity of the Governing Documents—is "a necessary antecedent to the act-of-state analysis." *PDVSA II*, 51 F.4th at 467. We also concluded that New York law—specifically § 8-110 of the state's Uniform Commercial Code— was unclear as to which jurisdiction's substantive law governs the validity of the Governing Documents. Cautious of doing violence to New York law and cognizant that the New York Court of Appeals was better equipped to resolve issues of its own state's law, we certified questions to the Court of Appeals.

## C. New York Court of Appeals

The Court of Appeals graciously accepted our certification request. *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 39 N.Y.3d 960 (2022). In its recent opinion, the court considered the following question:

> Given the presence of New York choice-of-law clauses in the Governing Documents, does UCC 8–110(a)(1), which provides that the validity of securities is determined by the local law of the issuer's jurisdiction, require the application of Venezuela's law to determine whether the

9

> 2020 Notes are invalid due to a defect in the process by which the securities were issued?[1]

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 6, 41 N.Y.3d 462, 2024 WL 674251, at *4 (N.Y. Feb. 20, 2024) ("*PDVSA III*").

Answering in the affirmative, the Court of Appeals concluded that "[m]atters going to the 'validity of [the] security' at issue here, that is the 2020 Notes, are governed by the law of Venezuela—i.e., the 'local law of the issuer's jurisdiction' under UCC 8-110(a)(1)." *Id.* Accordingly, the court concluded that "determining whether the securities issued by these Venezuelan entities are valid requires analysis of Article 150 and related provisions of the Venezuelan Constitution." *Id.* at *6.

The court emphasized the importance of "distinguish[ing] carefully between the validity of a security issued by a Venezuelan entity, which is governed by Venezuelan law, and all other issues that remain governed by New York law." *Id.* So even though Venezuelan law applies to the validity of the securities, it does not apply "to other actions arising from or related to the transaction." *Id.* And, "[e]ven if a security issued by a Venezuelan entity is invalid

---

[1] In light of its answer to this question, the court did not address the other two we posed.

under Venezuelan law, the effect of that invalidity is nonetheless governed by New York law." *Id.*

After the Court of Appeals' decision, the case returned to us, and we invited the parties to submit supplemental briefing.

**DISCUSSION**

In our certification decision, we posited two potential scenarios following the Court of Appeals' resolution of the case. If the Court of Appeals "conclude[d] New York choice-of-law principles require the application of New York law on the issue of the validity of the 2020 Notes, and that Article 150 and the resolutions have no effect on the validity of the contract under New York law, then we would affirm the district court's decision to apply New York law and uphold the validity of the bonds." *PDVSA II*, 51 F.4th at 475. But "if the court conclude[d] Venezuelan law applies to the particular issue of PDVSA's legal authority to execute the Exchange Offer, then we would likely remand for an assessment of Venezuelan law on that question and, if necessary, for consideration of the Creditors' equitable and warranty claims." *Id.*

The Court of Appeals has now ruled: "Matters going to the 'validity of [the] security' at issue here, that is the 2020 Notes, are governed by the law of Venezuela—i.e., the 'the local law of the issuer's jurisdiction' under UCC 8–

11

110(a)(1)." *PDVSA III*, 2024 WL 674251, at \*4.  Consistent with our roadmap, we vacate and remand to the district court.  As we discuss below, we also decline to consider the parties' arguments regarding the act-of-state doctrine at this juncture.

## I.     Choice of Law

According to the Court of Appeals, under New York law, whether the 2020 Notes are valid turns on substantive Venezuelan law.  This squarely conflicts with the district court's dispositive conclusion that pursuant to New York's choice-of-law principles, substantive New York law governs the validity of the Notes, and the requirements of the Venezuelan Constitution are irrelevant.  *See PDVSA I*, 495 F. Supp. 3d at 292 ("Venezuelan law is ultimately irrelevant to this action.").  Given the Court of Appeals' conclusion, the district court erred, and we therefore vacate its decision and remand so that the district court can, in the first instance, determine whether the 2020 Notes and associated instruments were issued in violation of the Venezuelan Constitution and are thus invalid.

To be sure, we are empowered to decide questions of foreign law, even if the district court has not yet done so.  *See Bugliotti v. Republic of Argentina*, 952 F.3d 410, 413 (2d Cir. 2020) (recognizing that "we undoubtedly have discretion to decide [a] question of Argentine law in the first instance and would not be limited to the record created in the district court were we to do so"); *see also Curley v. AMR*

12

*Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (noting "our agreement with the concept that appellate courts, as well as trial courts, may find and apply foreign law"); Fed. R. Civ. P. 44.1.

But we have recognized that determinations of another sovereign's law "frequently call for fact-like procedures that a district court is better situated to implement." *Bugliotti*, 952 F.3d at 414. In this case, the district court noted that it received "excellent briefing and analysis from the parties and their respective experts on the intricacies of Venezuelan law." *PDVSA I*, 495 F. Supp. 3d at 292. It considered thousands of pages of discovery, solicited the views of the Department of State, and heard oral argument on Venezuelan law. Accordingly, "considerations of judicial economy . . . lead us to remand rather than review a foreign legal question with which the district court . . . did not fully[] engage." *Bugliotti*, 952 F.3d at 414.

## II.    Act-of-State Doctrine

When this case was first before us, the PDV Entities challenged two aspects of the district court's decision: its rejection of their arguments based on the act-of-state doctrine and its choice-of-law analysis. In ruling on the parties' dueling summary judgment motions, the district court first determined that the act-of-state doctrine did not apply and then turned to the choice-of-law analysis. In our

certification decision, we disagreed with the district court's order of analysis and characterized "the choice-of-law analysis as a necessary antecedent to the act-of-state analysis in this case." *PDVSA II*, 51 F.4th at 467. Beyond that, we did not evaluate the district court's decision to reject the PDV Entities' act-of-state argument.

Now, faced with the Court of Appeals' conclusion that Venezuelan law governs the validity of the 2020 Notes, the parties disagree about whether we should take up the act-of-state argument ourselves or simply remand. We choose the latter and refrain from deciding at this juncture whether and how the doctrine applies in this case.

Our decision follows in part from the fact that there may be no need to reach the question. The act-of-state doctrine itself flows from a broad avoidance principle: courts should refrain from judging the validity of a foreign state's sovereign acts. It is built around separation of powers concerns relating to foreign affairs and reflects "'the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 404 (1990) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964)). To avoid intruding on matters better left to another branch, the act-of-state

14

doctrine supplies a rule of decision on the merits: courts must accept as valid the acts of foreign sovereigns taken within their own jurisdictions. *See Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 140 (2d Cir. 2022).

Act-of-state issues arise only "when the outcome of the case turns upon . . . the effect of official action by a foreign sovereign." *Kirkpatrick*, 493 U.S. at 406. So, "[w]hen that question is not in the case, neither is the act of state doctrine." *Id.*

The PDV Entities argue that the National Assembly resolutions identified above constitute a sovereign act invalidating the challenged instruments, and that the act-of-state doctrine requires us to accept as valid that determination. But the outcome of the case does not necessarily turn on the effect of the National Assembly's resolutions.

If, for example, the Exchange Offer is invalid under the Venezuelan Constitution for lack of legislative approval—wholly independent of the resolutions—then there would be no need to evaluate the "validity" or effect of the resolutions.[2] In that event, there is no role for the act-of-state doctrine to play because antecedent questions may render the doctrine irrelevant, or at least superfluous. On the other hand, if the district court concludes that the Exchange

---

[2] The term "valid" becomes confusing in this context because the "validity" of the 2016 and 2019 legislative actions—the subject of the act-of-state argument—may determine whether *the Exchange Offer* was valid.

Offer was valid under Venezuelan law, then the question of whether any or all of the legislature's resolutions constitute acts of state that invalidate the Exchange Offer takes center stage.

So it is entirely possible that we will eventually be required to determine the applicability and effect of the act-of-state doctrine in this case. But because the threshold question of whether the 2020 Notes are valid under the Venezuelan Constitution could resolve the contract question, it is far from inevitable. Accordingly, we refrain from answering a question that does not yet require an answer, and we decline the PDV Entities' request to instruct the district court about various legal questions that may (or may not) arise on remand.

To be clear, we express no view as to the applicability and effect of the act-of-state doctrine here, nor as to any other claims. It is up to the district court to consider these issues in the first instance in light of the New York Court of Appeals' guidance. Until it does, we have no occasion to consider them, and our decision not to conduct a plenary review of the district court's act-of-state doctrine analysis should not be construed as implicitly endorsing or rejecting it.

Moving forward, we emphasize that the district court has broad flexibility. It may, if it chooses, seek supplemental briefing. It may also choose to address any

other pending or potentially dispositive arguments before or alongside the contract claim.

## CONCLUSION

Under New York Uniform Commercial Code § 8-110, Venezuelan law governs the validity of the 2020 Notes. The district court erred in its holding to the contrary, so we **VACATE** the judgment of the district court and **REMAND** for further consideration.