25-253-cv
*Tatari v. Durust*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of March, two thousand twenty-five.

PRESENT:
> GUIDO CALABRESI,
> ALISON J. NATHAN,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

Zuhtu Onur Tatari,

> *Petitioner-Appellee,*

> v.                                                                No. 25-253-cv

Neva Durust,

> *Respondent-Appellant.*

_____

**FOR RESPONDENT-APPELLANT:**

PAUL H. TZUR, Brett S. Ward, Andrew T. Hambelton, Blank Rome LLP, New York, NY.

**FOR PETITIONER-APPELLEE:**

RICHARD MIN, Michael Banuchis, Green Kaminer Min & Rockmore LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Respondent-Appellant Neva Dürüst appeals from a February 3, 2025, judgment granting the petition of Petitioner-Appellee Zühtü Tatari and ordering that O.T., the parties' joint child, be returned to Türkiye.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Dürüst and Tatari obtained a Divorce Decree from a Turkish family court in 2022, which orders that Dürüst be appointed custody of O.T. and which approves

2

and recites various provisions of a Divorce Protocol to which the parties agreed. The Decree appends Section 3.7 of the Protocol, which relates to the relocation of O.T. abroad. Section 3.7 reads: "[Dürüst] agrees, acknowledges, and undertakes irrevocably that if she decides to live abroad together with the joint child, she will obtain the approval and opinion of [Tatari]." App'x 599.[1]

Dürüst relocated O.T. to New York in August of 2024, without first notifying Tatari or seeking his consent. Tatari brought the present action, petitioning for return of O.T. to Türkiye pursuant to the Hague Convention on the Civil Aspects of International Child Abduction. After granting Tatari's summary judgment motion in part, the district court held an expedited bench trial on the issue of whether O.T.'s removal was in violation of Tatari's custodial rights under Turkish law. The court then ruled in Tatari's favor, and Dürüst timely appealed.

---

[1] The parties pressed different translations of the Divorce Decree before the district court, which focused on whether Section 3.7 requires Dürüst to obtain Tatari's approval before she moves abroad with O.T. or merely seek his consultation and opinion. Tatari argues that Section 3.7 should be translated in English as: "Neva DÜRÜST TATARİ agrees, acknowledges, and undertakes irrevocably that if she decides to live abroad together with the joint child, she will obtain the approval and opinion of Zühtü Onur TATARİ." App'x 599. Dürüst's translation, on the other hand, provided that Section 3.7 should be read only as requiring her to "consult and seek the opinion" of Tatari before relocating O.T. *Id.* at 586. The district court, relying in part upon expert testimony, adopted Tatari's translation. Although Dürüst continues to cite her preferred translation before this Court, she does not directly challenge the district court's determination that Tatari's translation is more faithful to the Turkish. To the extent Dürüst presses this argument on appeal, we adopt Tatari's proffered translation for substantially the same reasons that the district court gave in its analysis.

## I. Standard of Review

"In cases arising under the Hague Convention and [the International Child Abductions Remedies Act], we review a district court's factual determinations for clear error." *Mota v. Castillo*, 692 F.3d 108, 111 (2d Cir. 2012). "We review *de novo* a district court's interpretation of the Convention and its application of the Convention to the facts." *Id*. "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1; *see also Petroleos De Venezuela S.A. v. MUFG Union Bank, N.A.*, 106 F.4th 263, 268 (2d Cir. 2024) ("To be sure, we are empowered to decide questions of foreign law, even if the district court has not yet done so."); *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) ("[A]ppellate courts, as well as trial courts, may find and apply foreign law.").

## II. Wrongful Removal & the Hague Convention

The Hague Convention established procedures to ensure the prompt return of children to the State of their habitual residence when they have been wrongfully removed. Hague Convention of 25 October 1980 on the Civil Aspects of

4

International Child Abduction [*hereinafter* Hague Convention], preamble. The International Child Abductions Remedies Act (ICARA), 22 U.S.C. §§ 9001–11, implements the Hague Convention. *See Ozaltin v. Ozaltin*, 708 F.3d 355, 358 n.1 (2d Cir. 2013). "[T]o prevail on a claim under the Hague Convention a petitioner must show that (1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Gitter v. Gitter*, 396 F.3d 124, 130–31 (2d Cir. 2005). "The petitioner must establish these requirements by a preponderance of the evidence." *Id*.

### III. Discussion

On appeal, Dürüst challenges only the district court's determination as to the second prong of the analysis, whether the removal was in breach of Tatari's custodial rights under Turkish law.

Tatari argues that a plain reading of Section 3.7 requires Tatari's consent before O.T. may be relocated abroad and that this plain reading of the Divorce Protocol ought to be the end of the dispute. Dürüst contends that Section 3.7 is

5

not enforceable under Turkish law and that its *legal* meaning is far from plain.

This is a close case, and both parties proffered plausible legal arguments and experts to support those arguments. We see no reason here, where Dürüst is free to pursue an order from the Turkish court conclusively supporting her right to move abroad under the Divorce Decree, to disagree with the District Court's assessment of the experts' relative credibility. The Hague Convention counsels in favor of sending children back to their habitual residence so that close cases can be resolved in the family courts where they originated. Therefore, we conclude that the evidence before us supports the finding that Tatari had an enforceable right under Turkish law to determine O.T.'s country of residence, which, regardless of who had "custody," is a protected custodial right under the Hague Convention that Dürüst breached by moving O.T. to the United States without his approval. We agree with the district court that Tatari's custodial rights were breached, making the removal wrongful.

However, we also acknowledge that Dürüst reasonably relied on ambiguous statements by Turkish courts and Tatari's contemporaneous statement, memorialized in the Divorce Decree, that he understood the Protocol not to be independently enforceable:

"I understand that the Defendant may legally make decisions at [her] sole discretion in line with [her] custodian rights, including material decisions about the child's healthcare and moving his residence to abroad. I am still willing to seek a decision for non-contentious divorce; however, I reserve my right to bring a lawsuit to ensure the alternation (change) of custody unless I am consulted by the Defendant and give my approv[al] as agreed with the defendant in the protocol."

App'x 583. She argues that Tatari's later actions, filing a change of custody petition in Turkish court rather than seeking direct enforcement of the ban on her relocation with O.T., confirm this reading of the Protocol's legal effect.

We believe that Dürüst's reading of the Divorce Decree and its legal effects was likely an honest mistake of law. And it remains possible that Dürüst will secure a decision from a Turkish court confirming her own reading of the Protocol and unambiguously permitting her relocation. For that reason, assessment of costs against Dürüst in this case would be "clearly inappropriate." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375–76 (2d Cir. 2013) ("Although mistake of law is not a defense to the return action itself, it is a relevant equitable factor when considering whether a costs award is appropriate.").

Based on the legal orders and translations before us, as well as the Hague Convention's preference for speedy action and resolution in the courts of the

child's habitual residence, we choose to err on the side of finding the plain language of the Protocol enforceable.

* * *

We have considered Dürüst's remaining arguments, including her argument that the district court erred in declining to exercise its authority under Article 15 of the Hague Convention, and conclude they are without merit. Accordingly, the district court's judgment is **AFFIRMED**. Tatari's motion to supplement the record is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8